UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-CV-24678-COOKE/LOUIS

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

ONIX CAPITAL LLC, *et al*.,

    Defendants.
_____/

### RECEIVER'S THIRD INTERIM REPORT AND MOTION AUTHORIZING THE PAYMENT OF FEES AND EXPENSES OF RECEIVER AND HER PROFESSIONALS

Melanie E. Damian, Court-appointed Receiver in the above-styled case (the "Receiver"), files this Third Interim Report and Motion Authorizing Payment of Fees and costs incurred from May 1, 2018 through December 31, 2018 (the "Application Period").[1]

### Introduction

On April 4, 2017, this Court entered an order (the "Receivership Order") appointing the Receiver to exercise full power and control over Onix Capital LLC ("Onix") and the Relief Defendants.[2] Since that time, the Receiver has performed the duties required to investigate the assets of the Receivership Entities and to secure and liquidate the assets for ultimate distribution

---

[1] The Receiver seeks (1) authorization to immediately pay all fees and costs less a hold back of 20% (as to fees); and (2) authorization to pay the 20% hold back upon final distribution of Receivership assets to investors.

[2] The "Relief Defendants" are Deep Ocean LLC, Next Cab Ventures LLC, Next Call Ventures LLC, Next Chat Ventures LLC, Next Pay Ventures LLC, Next U Ventures LLC, Next Track Ventures LLC, and Progressive Power LLC.

to creditors. As part of these efforts, the Receiver has facilitated an international claims process resulting in 75 proofs of claim being filed, reviewed and resolved all filed claims except for one claim that is the subject of an appeal that is pending before this Court. The Receiver's resolution of the claims included the comprehensive settlement with the Chilean and B.V.I. Liquidators. Concurrent with those efforts, the Receiver has recovered $643,500.00 for the estate through her pursuit of and settlement of individual "claw back" actions and individual negotiations and has separately recovered over $7.3 million for the estate through the liquidation and sale of receivership assets; including the Receivership's most recent sale of its assets in SherpaCapital for $1,850,822.00. Since the filing of her Second Interim Report, the Receiver and her professionals have accomplished the following:

### Administration and Resolution of Claims

(a) Completed her analysis of 75 filed proofs of claim seeking a total of $53,864,621.00 from the Receivership estate;

(b) Provided each claimant with a written initial determination;

(c) Opened lines of dialogue with all claimants who had questions as to the Receiver's initial determinations;

(d) Conferred with all claimants who objected to the Receiver's initial determination or had questions as to the Receiver's initial determination;

(e) Reviewed and analyzed all supplemental materials provided by all objecting claimants in support of their objections to the Receiver's initial determinations;

(f) Provided final determinations to all outstanding claims; concluding the claims analysis process pursuant to this Court's Order Granting Receiver's Motion to Approve Claims Administration Process [D.E. 179];

(g)     Of the 75 claims filed, there were only three (3) objections filed with the Court – two belonging to the BVI and Chilean Liquidators, and one filed by an individual claimant;

(h)     The Receiver has fully briefed her position as to the individual claimant's objection with the Court [D.E. 204];

### Settlement with Chilean and B.V.I. Liquidators

(i)     The Receiver also proposed and participated in a mediation with the Chilean and B.V.I Liquidators in an attempt to resolve their objections as to their over $35,237,701.00 worth of claims filed in this Receivership;

(j)     Produced documents to the Chilean Liquidator in a manner that protected victims of the Ponzi scheme, and in a format that was compatible with the Liquidator's requirements;

(k)     The Receiver and the Chilean and B.V.I. Liquidators, with the assistance of Magistrate Judge McAliley, have now successfully mediated and resolved these Liquidator objections;

(l)     Pending the Court's decision as to the sole remaining, individual claim objection- the Receiver has concluded the claims process, approving a total of 29 claims;

### Settlement of Claw Back Litigation

(m)    The Receiver has simultaneously resolved or negotiated the settlement of all seven "claw back" actions to recover funds for the benefit of the Receivership Entities' creditors. In total, the Receiver was able to successfully recover $220,250.00 from these actions;

(n)     In addition, the Receiver had previously negotiated tolling agreements with parties located both in the United States and abroad to afford her the opportunity to further investigate and potentially resolve such claims against these individuals for net winnings they

3

received from the fraud. She has now settled all of those tolled actions for a total recovery of $173,250.00;

### Return of Investments

(o)     The Receiver further negotiated a settlement with in Lab4U, resulting in a return of the Onix's entire $250,000 investment in that entity;

(p)     Collectively, these settlements have resulted in a return of $643,500.00 to the Receivership Estate;

### Sale of Non-Public Assets

(q)     The Receiver solicited and engaged a stalking horse bidder for purposes of auctioning off the Receivership's non-public assets in SherpaCapital, which in turn equates to a holding in Uber Transportation. The Receiver put forward a Motion to Approve Stalking Horse Purchase Agreement and Bidding Procedures for this asset [D.E. 246] and on February 11, 2019, held an auction for this asset. On February 13, 2019, this Court held a sale hearing at which the winning bidder and back-up bids from that auction were recognized and the Receiver was given the authority to close the sale of the Receivership's SherpaCapital assets for the winning bid price of $1,850,822.00;

(r)     Researched and evaluated various strategies and opportunities for liquidating the Receivership's other non-public assets, negotiated and entered into nondisclosure agreements to facilitate the sale of non-public assets, and identified potentials buyers for these assets and have solicited bids for same;

4

(s)     When completed, the Sherpa asset sale and the Receiver's settled claims will have resulted in at least an additional $2,494,322.00 being recovered by the Receiver for the Receivership Estate;

## Investigation of Third Parties

(t)     The Receiver has continued to investigate all parties involved in the fraud within the United States, reviewed volumes of documents produced by banks, professional organizations, investors and other entities connected to the fraud, and worked with third parties to obtain subpoenaed documents and records that shed further light on investments made by Onix and the Relief Defendants.  Through that process the Receiver has now entered into tolling agreements with two professional organizations that had provided professional services to the fraud and has scheduled pre-suit mediations with both of these entities;

(u)     Subpoenaed additional potential litigation targets for the purposes of recovering funds for the Receivership Estate;

(v)     Conducted interviews of investors, interested parties, and former employees of the Receivership Estate for purposes of untangling the fraud and identifying assets for the Receivership Estate;

## Communications with Creditors

(w)     Maintained active contact with parties interested in the receivership estate to ensure that all investors and interested parties' questions are answered and issues address,

(x)     Frequently updated the Receivership website to ensure that the public is well appraised of all events occurring in this Receivership process.

### Status of the Receivership Accounting

The Receivership Estate currently has cash on hand in the amount of $5,733,040.13 which the Receiver is holding in the Receiver's trust accounts at IberiaBank and City National Bank. The SEC's Standardized Fund Accounting Report (the "SFAR") for the Application Period is attached hereto as **Exhibit A.**

### Other Unliquidated Assets

With permission of the Court, the Receiver is working with its Corporate Advisory Counsel to liquidate the following non-public Receivership assets.

- Relief Defendant Next U Ventures over $2 million investment in Open English Holdings Inc.; and

- Relief Defendant Next Call Ventures, LLC $1 million investment in Dialpad, Inc.

All of these assets are presently maintained as non-public shares. The Receiver has contacted several investors who may be interested in purchasing these assets and is currently working with its Corporate Advisory Counsel to solicit formal bids and structure a transaction for these assets that fully complies with all applicable laws and other requirements.

The Receiver is also working directly with the following entities to liquidate the Receiver's holdings LeapFactor, Inc. in which Onix invested $225,000.

### Request for Fees and Costs

The Order appointing the Receiver provides at Paragraph 9 that "[f]ollowing a request seeking authorization from this Court, [Receiver may] employ legal counsel and appoint special agents, actuaries, accountants, clerks consultants, and or assistants as deemed necessary by the receiver to exercise the powers granted [in the Order]." At Paragraphs 10 and 11, the Order

provides for reasonable compensation to be paid such professionals from the assets held by the Receivership Estate.

On October 23, 2017, this Court entered an Order Granting Receiver's Motion for Authorization To Employ Accountants For Receiver [D.E. 153] authorizing the Receiver to employ Soneet R. Kapila, of the accounting firm of KapilaMukamal, LLP, as an accountant to assist the Receiver to fulfill her duties under the Receivership Order.

On December 6, 2017, this Court entered an Order Granting the Receiver's first Motion to Authorize the Payment of Fees and Expenses [D.E. 169].

On May 18, 2017, this Court entered an Order Granting Receiver's Motion for Authorization to Employ Corporate Advisory Counsel for Liquidation of Next Cab Ventures LLC [D.E. 190] authorizing the Receiver to employ Gregory C. Yadley, Esq. and the law firm of Shumacker, Loop & Kendrick, LLP as Corporate Advisory Counsel to assist the Receiver in selling the Receivership's non-public securities.

And, on November 30, 2018, this Court entered an Order Granting the Receiver's Second Motion for Attorney Fees and Expenses and Interim Report [D.E. 242].

As with her First and Second Applications, the Receiver is proposing that this Court approve all of the fees and costs incurred by the Receiver and her Counsel during the Application Period and authorize the distribution for payment of 100% of such costs and 80% of such fees (with a holdback of 20% of the fees). The Receiver is further asking that this Court approve the fees incurred by the Receiver's accountants and Corporate Advisory Counsel in this matter. This is the Receiver's third request for approval of compensation and reimbursement of costs incurred by the Receiver and her counsel and covers an eight-month period.

The Receiver proposes that the awarded fees and costs be paid from the funds currently held in the Next Chat Ventures LLC and Next Pay Ventures LLC accounts on a 50/50 allocated basis.

The attached invoices reflect the total amount of fees and costs incurred by the Receiver and each of her professionals[3] during the Application Period (May 1, 2018 through December 31, 2018) is as follows:

    a. The Receiver and Damian & Valori LLP: The total amount of fees and costs incurred was $20,831.72 (which total includes fees in the amount of $20,670.00 and costs in the amount of $161.72). *See* detailed time entries attached as **Exhibit B** hereto.

    b. Kozyak Tropin & Throckmorton, LLP: The total amount of fees incurred was $299,404.03 (which total includes fees in the amount of $272,290.00 and costs in the amount of $27,114.03). *See* **Exhibit C** hereto.

    c. KapilaMukamal, LLP: The total amount of fees incurred were $69,164.57 (which total includes fees in the amount of $68,187.80 and costs in the amount of $976.77). *See* **Exhibit D** hereto.

---

[3] As required by the SEC's Billing Agreement, the Fee Schedule reflecting the names and hourly rates of all of the Receiver's professionals and paraprofessionals are fully set forth in each firm's respective invoices attached hereto as Exhibits B and C. Kozyak Tropin & Throckmorton, LLP has a core group of attorneys primarily responsible for most matters involved in this case, but in certain instances has brought in other attorneys – particularly associates at lower billable rates – to work on discrete tasks where appropriate (i.e., Milva Lissabet assisted with communications in Spanish, Rachel Sullivan worked on the appeal, and John Criste worked on insurance issues relating to a target).

d. Shumaker Loop & Kendrick, LLP: The total amount of fees incurred were $20,136.90 (which includes fees in the amount of $20,015.50 and costs in the amount of $121.40). *See* **Exhibit E** hereto.

In the case of the Receiver, Damian & Valori LLP, and Kozyak Tropin & Throckmorton, LLP, the foregoing totals reflect time charged at reduced hourly rates in accordance with the agreement between the Receiver and the Commission. Specifically, for purposes of this representation, the foregoing firms reduced their partner attorney rates from $650-$400 per hour to $275 per hour, and their associate attorney rates from $175-$375 per hour to $150-$250 per hour.

The services rendered during the Application Period are reflected and described in the attached Exhibits, and the professionals have separated their time into specific Activity Categories as directed by the Commission's Receivership Billing Instructions.

## Memorandum of Law

The Receiver and her professionals are entitled to reasonable compensation and expenses pursuant to the Receivership Order. A receiver appointed by a court who reasonably and diligently discharges her duties is entitled to be fairly compensated for services rendered and expenses incurred. *See SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); *see also SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) ("[I]f a receiver reasonably and diligently discharges his duties, he is entitled to compensation.") A receiver and her lawyers are "also entitled to be reimbursed for the actual and necessary expenses they incurred in the performance of their duties." *Fed. Trade Comm'n v. Direct Benefits Grp.,* LLC, Case NO. 6:11-cv-1186-Orl-28TBS, 2013 WL 6408379, at *3 (M.D. Fla. Dec. 6, 2013).

Receivership courts have traditionally determined reasonableness of compensation by using the "lodestar" approach, calculating a reasonably hourly rate in the relevant market and the reasonable number of hours expended. *See, e.g., SEC v. Aquacell Batteries, Inc.*, Case No. 6:07-cv-608-Orl-22DAB, 2008 WL 276026, *3 (M.D. Fla. Jan. 31, 2008); *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988). The hourly rates billed by the Receiver and her professionals are reasonable for professionals practicing in the Southern District of Florida, particularly in light of the reduced hourly rates described above, and the services reflected in the attached exhibits were reasonably necessary to the Receiver's performance of her duties as set forth in the Receivership Order.

### Certification of Conference

*The Receiver has discussed the relief requested herein with the Commission and is authorized to represent to this Court that, after reviewing the time records and other materials submitted herewith, the Commission does not oppose the relief sought in this Application.*

WHEREFORE, Melanie E. Damian, as Receiver, respectfully requests that the Court enter an Order:[4]

(a)  approving the total amount of fees and costs for the Application Period of: the Receiver and her counsel Damian & Valori LLP in the amount of $20,670.00 in fees and $161.72 in costs; Kozyak, Tropin & Throckmorton LLP in the amount of $272,290.00 in fees and $27,114.03 in costs; KapilaMukamal, LLP in the amount of $68,187.80 in fees and $976.77 in costs; Shumaker, Loop & Kendrick, LLP in the amount of $20,015.50 in fees and $121.40 in costs.

---

[4] A copy of a proposed order granting the Receiver's Third Interim Application for Order Authorizing Payment of Fees and Expenses is attached hereto as **Exhibit F**.

(b) authorizing payment of 80% of the approved fees and 100% of the approved costs from the assets held by the Receivership Estate, as set forth herein; and

(c) authorizing payment of the remaining balance of the approved fees (*i.e.*, the 20% holdback) upon final distribution of Receivership assets to investors.

Dated: February 15, 2019                                   Respectfully submitted,

**KOZYAK TROPIN & THROCKMORTON, LLP**
*Counsel for the Receiver*
2525 Ponce de Leon Boulevard, 9th Floor
Miami, Florida 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
By: */s/ David L. Rosendorf*
  David L. Rosendorf
  FL Bar No. 996823
  Corali Lopez-Castro
  FL Bar No. 863830
  Daniel S. Maland
  FL Bar No. 10114932
  dlr@kttlaw.com
  clc@kttlaw.com
  dmaland@kttlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on February 15, 2019 as filed with the Clerk of the Court using CM/ECF.

By: /s/ David L. Rosendorf
  David L. Rosendorf

11D0363

## **CERTIFICATION**

The undersigned certifies that:

(a) I have read this application ("Application");

(b) to the best of my knowledge, information and belief formed after reasonable inquiry, the Application and all fees and expenses therein are true and accurate and comply with the Billing Instructions;

(c) all fees contained in the Application are based on the rates listed in the Exhibits attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

(d) I have not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission);

(e) in seeking reimbursement for a service which I justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), I request reimbursement only for the amount billed to me by the third-party vendor and paid by me to such vendor. To the extent that such services were performed by me as Receiver, I certify that I am not making a profit as Receiver on such reimbursable service.

(f) With the exception of the Billing Instructions, I have not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

Respectfully submitted and certified,

s/ Melanie Damian
Melanie Damian, P.A. Receiver


Respectfully submitted this 15th day of February, 2019.