UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-CV-24678-COOKE/LOUIS

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

ONIX CAPITAL LLC, *et al.*,

    Defendants.
_____/

**RECEIVER'S FOURTH INTERIM REPORT AND MOTION AUTHORIZING (A) THE PAYMENT OF FEES AND EXPENSES OF RECEIVER AND HER PROFESSIONALS AND (B) SUPPLEMENTAL DISTRIBUTION TO CLAIMANT NO. 17**

Melanie E. Damian, Court-appointed Receiver in the above-styled case (the "Receiver"), files this Fourth Interim Report and Motion Authorizing Payment of Fees and costs incurred from January 1, 2019 through June 30, 2019 (the "Application Period")[1] and authorizing supplemental distribution to Claimant No. 17.

**Introduction**

On April 4, 2017, this Court entered an order (the "Receivership Order") appointing the Receiver to exercise full power and control over Onix Capital LLC ("Onix") and the Relief Defendants.[2] Since that time, the Receiver has performed the duties required to investigate the

---

[1] The Receiver seeks (1) authorization to immediately pay all fees and costs less a hold back of 20% (as to fees); and (2) authorization to pay the 20% hold back upon final distribution of Receivership assets to investors.

[2] The "Relief Defendants" are Deep Ocean LLC, Next Cab Ventures LLC, Next Call Ventures LLC, Next Chat Ventures LLC, Next Pay Ventures LLC, Next U Ventures LLC, Next Track Ventures LLC, and Progressive Power LLC.

assets of the Receivership Entities and to secure and liquidate the assets for ultimate distribution to creditors.  As part of these efforts, the Receiver has facilitated an international claims process resulting in 75 proofs of claim being filed, reviewed and resolved, and has further administered an initial distribution to all allowed Claimants pursuant to this Court's order.  Concurrent with the Receiver's resolution of the claims, the Receiver orchestrated and achieved a comprehensive settlement with the Chilean and B.V.I. Liquidators.  In addition, the Receiver has recovered $643,500.00 for the estate through her pursuit of and settlement of individual "claw back" actions and individual negotiations and has separately recovered over $7.3 million for the estate through the liquidation and sale of receivership assets; including the Receivership's sale of its assets in SherpaCapital for $1,850,822.00.  Finally, the Receiver engaged in pre-suit mediation with a professional organization that provided services to Chang's fraudulent enterprise.  As a result of that mediation, the professional organization and the Receiver have a settlement in principal subject to Court approval which would require the professional organization to pay $2,600,000 to the Receivership Estate to resolve the Receiver's potential claims against them.  Since the filing of her Third Interim Report, the Receiver and her professionals have accomplished the following:

### **Resolution of Claims and Initial Distribution**

(a) Concluded the claims process for the Receivership Estate, including the resolution of all outstanding claims objections therefore ending the claims application and appeals process for this Receivership;

(b) Orchestrated payments of initial distributions of the Receivership Estate through global mailings across three continents to all allowed claimants, pursuant to this Court's order [D.E. 256];

(c)     Maintained open lines of dialogue with all claimants who had questions as to the Receiver's initial distributions and the Receivership in general;

### Settlement with Chilean and B.V.I. Liquidators

(d)     Continued to cooperate and work with the Chilean and B.V.I. Liquidators, pursuant to their collective settlement agreement, to help expedite the global resolution of the liquidation of this fraud's assets;

### Sale of Non-Public Assets

(e)     Solicited and engaged a stalking horse bidder for purposes of auctioning off the Receivership's non-public assets in SherpaCapital, which in turn equates to a holding in Uber Transportation.  The Receiver filed a Motion to Approve Stalking Horse Purchase Agreement and Bidding Procedures for this asset [D.E. 246] and on February 11, 2019, held an auction for this asset.  On February 13, 2019, this Court held a sale hearing at which the winning bidder and back-up bids from that auction were recognized and the Receiver was given the authority to close the sale of the Receivership's SherpaCapital assets for the winning bid price of $1,850,822, which exceeded the stalking horse bid by $342,824[D.E. 256];

(f)     Researched and evaluated various strategies and opportunities for liquidating the Receivership's other non-public assets, negotiated and entered into nondisclosure agreements to facilitate the sale of non-public assets, and identified potentials buyers for these assets and have solicited bids for same;

(g)     Closed the Sherpa asset sale, pursuant to this Court's order, resulting in $1,850,822.00 being recovered by the Receiver for the Receivership Estate;

### Investigation of, and Suits Against Third Parties

(h)     Continued to investigate all parties involved in the fraud within the United States, reviewed volumes of documents produced by banks, professional organizations, investors and other entities connected to the fraud, and worked with third parties to obtain subpoenaed documents and records that shed further light on investments made by Onix and the Relief Defendants.

(i)     Participated in a pre-suit mediation with a professional organization that provided services to the fraud, and has since entered into a pre-suit settlement for $2,600,000, in exchange for resolving the Receiver's claims against that party Shortly, the Receiver will be filing her request with this Court to authorize the Receiver to finalize this pre-suit settlement agreement and facilitate the professional organization's $2,600,000 settlement payment to the Receivership Estate.

(j)     Attempted to resolve third-party claims against a separate professional organization through two separate mediations before the Hon. Herb Stettin.  Due to the Receiver and that third-party reaching impasse in mediation, the Receiver has filed a comprehensive Demand for Arbitration seeking damages against that third-party.

(k)     Initiated a third-party claw back proceeding against Yellow Brick Capital (UK) Limited in the Southern District of Florida, seeking the return of $160,000 worth of fraudulent transfers that were wired from Onix Capital to that British entity.

### Communications with Creditors

(l)     Maintained active contact with parties interested in the Receivership Estate to ensure that all investors and interested parties' questions are answered and issues addressed,

(m)   Frequently updated the Receivership website to ensure that the public is well appraised of all events occurring in this Receivership process.

### Negotiations with the Internal Revenue Service

(n)   Continued negotiations with the Internal Revenue Service to minimize or negate the tax costs resulting from the Receivership Entities' improper tax filings prior to the appointment of the Receiver.

### Status of the Receivership Accounting

The Receivership Estate currently has cash on hand in the amount of $2,190,145.81 which the Receiver is holding in the Receiver's trust accounts at IberiaBank and City National Bank.  The SEC's Standardized Fund Accounting Report (the "SFAR") for the Application Period is attached hereto as **Exhibit A.**  This does not include the settlement recently reached with the third party, professional organization for $2,600,000.

### Other Unliquidated Assets

With permission of the Court, the Receiver is working with its Corporate Advisory Counsel to liquidate the following non-public Receivership assets.

- Relief Defendant Next U Ventures over $2 million investment in Open English Holdings Inc.; and

- Relief Defendant Next Call Ventures, LLC $1 million investment in Dialpad, Inc.

All of these assets are presently maintained as non-public shares.  The value of these assets is unknown.  The Receiver has contacted numerous investors who may be interested in purchasing these assets and is currently working with its Corporate Advisory Counsel to solicit formal bids and structure a transaction for these assets that fully complies with all applicable laws and other requirements.

Prior to the Receivership, Onix invested $225,000 in the technology company, Leapfactor, Inc. The Receiver has demanded the return of that investment from Leapfactor.

### Amendment to Initial Claim Distribution

Through her ongoing correspondence with all claimants, the Receiver has learned that Claimant Number 17, whom this Court has previously Ordered be allowed a claim of $72,750.00, is entitled to an allowed claim of $187,400 and not $72,750.00. This proposed claim adjustment and correction is the result of verified evidence received by the Receiver, that has now been confirmed by the Receiver's court-appointed forensic accountants. As a result of this evidence and confirmation by her accountants, the Receiver now hereby requests this Court's permission to adjust Claimant Number 17's $72,750.00 allowed claim amount, to $187,400, the amount rightfully owed to Claimant Number 17 by the Receivership and pay the adjusted pro rata amount on receipt of this Court's Order approving the new allowed claim amount.

### Request for Fees and Costs

The Order appointing the Receiver provides at Paragraph 9 that "[f]ollowing a request seeking authorization from this Court, [Receiver may] employ legal counsel and appoint special agents, actuaries, accountants, clerks consultants, and or assistants as deemed necessary by the receiver to exercise the powers granted [in the Order]." At Paragraphs 10 and 11, the Order provides for reasonable compensation to be paid such professionals from the assets held by the Receivership Estate.

On October 23, 2017, this Court entered an Order Granting Receiver's Motion for Authorization To Employ Accountants For Receiver [D.E. 153] authorizing the Receiver to employ Soneet R. Kapila, of the accounting firm of KapilaMukamal, LLP, as an accountant to assist the Receiver to fulfill her duties under the Receivership Order.

On December 6, 2017, this Court entered an Order Granting the Receiver's first Motion to Authorize the Payment of Fees and Expenses [D.E. 169].

On May 18, 2017, this Court entered an Order Granting Receiver's Motion for Authorization to Employ Corporate Advisory Counsel for Liquidation of Next Cab Ventures LLC [D.E. 190] authorizing the Receiver to employ Gregory C. Yadley, Esq. and the law firm of Shumacker, Loop & Kendrick, LLP as Corporate Advisory Counsel to assist the Receiver in selling the Receivership's non-public securities.

On November 30, 2018, this Court entered an Order Granting the Receiver's Second Motion for Attorney Fees and Expenses and Interim Report [D.E. 242].

On February 15, 2019, this Court entered an Endorsed Order Granting the Receiver's Motion to Employ Expert for Receiver, authorizing the Receiver to retain and compensate a Consulting Expert for purposes of building third-party claims, up to a maximum of $10,000. [D.E. 258]. The Consulting Expert has provided critical guidance in assisting the Receiver in building a complex and comprehensive case against a professional third-party that assisted and facilitated the fraud, and with whom the Receiver will soon be engaging in pre-suit mediation. The Consulting Expert has expended time and resources in excess of $10,000, which the Receiver believes was both valuable and critical. As a result of the Consulting Expert's work and analysis, the Receiver was able to build a case that has now culminated in a $2,600,000, pre-suit settlement. Thus, the Receiver respectfully includes this consultant's invoice here so that she can be authorized to pay all fees and reimburse all costs set forth on the expert's invoices, to the extent the Receiver deems such fees and costs to be reasonable and in the best interest of the Estate.

And, on April 16, 2019, this Court entered an Order Granting Receiver's Third Motion to Authorize the Payment of Fees and Expenses of Receiver and Her Professionals [D.E. 263].

As with her First, Second and Third Applications, the Receiver is proposing that this Court approve the fees and costs incurred by the Receiver and her Counsel during the Application Period and authorize the distribution for payment of 100% of such costs and 80% of such fees (with a holdback of 20% of the fees). The Receiver is further asking that this Court approve the fees incurred by the Receiver's accountants, the Receiver's Consulting Expert, and the Receiver's Corporate Advisory Counsel in this matter. This is the Receiver's fourth request for approval of compensation and reimbursement of costs incurred by the Receiver and her counsel and covers a seven-month period.

The Receiver proposes that the awarded fees and costs be paid from the funds currently held in the Receivership Estate's consolidated bank account.

The attached invoices reflect the total amount of fees and costs incurred by the Receiver and each of her professionals[3] during the Application Period (January 1, 2019 through June 30, 2019) is as follows:

  a. The Receiver and Damian & Valori LLP: The total amount of fees and costs incurred was $16,555.87 (which total includes fees in the amount of $16,460.50 and costs in the amount of $95.37). *See* detailed time entries attached as **Exhibit B** hereto.

---

[3] As required by the SEC's Billing Agreement, the Fee Schedule reflecting the names and hourly rates of all of the Receiver's professionals and paraprofessionals are fully set forth in each firm's respective invoices attached hereto as Exhibits B and C. Kozyak Tropin & Throckmorton, LLP has a core group of attorneys primarily responsible for most matters involved in this case, but in certain instances has brought in other attorneys – particularly associates at lower billable rates – to work on discrete tasks where appropriate (i.e., Sandra Mejia assisted with third-party mediations and John Criste worked on insurance issues relating to a target).

  b. Kozyak Tropin & Throckmorton, LLP: The total amount of fees incurred was $190,688.24 (which total includes fees in the amount of $171,955.00 and costs in the amount of $18,733.24). *See* **Exhibit C** hereto.

  c. KapilaMukamal, LLP: The total amount of fees incurred were $23,969.10 (which total includes fees in the amount of $23,724.30 and costs in the amount of $244.80). *See* **Exhibit D** hereto.

  d. Shumaker Loop & Kendrick, LLP: The total amount of fees incurred were $14,568.00 (which includes fees in the amount of $14,568.00 and no costs). *See* **Exhibit E** hereto.

  e. Consulting Expert. The total amount of fees incurred for expert services were $24,420.50 (which includes fees in the amount of $24,420.50 and no costs). *See* **Exhibit F** hereto.

 In the case of the Receiver, Damian & Valori LLP, and Kozyak Tropin & Throckmorton, LLP, the foregoing totals reflect time charged at reduced hourly rates in accordance with the agreement between the Receiver and the Commission. Specifically, for purposes of this representation, the foregoing firms reduced their partner attorney rates from $650-$400 per hour to $275 per hour, and their associate attorney rates from $175-$375 per hour to $150-$250 per hour.

 The services rendered during the Application Period are reflected and described in the attached Exhibits, and the professionals have separated their time into specific Activity Categories as directed by the Commission's Receivership Billing Instructions.

**Memorandum of Law**

The Receiver and her professionals are entitled to reasonable compensation and expenses pursuant to the Receivership Order. A receiver appointed by a court who reasonably and diligently discharges her duties is entitled to be fairly compensated for services rendered and expenses incurred. *See SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); *see also SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) ("[I]f a receiver reasonably and diligently discharges his duties, he is entitled to compensation.") A receiver and her lawyers are "also entitled to be reimbursed for the actual and necessary expenses they incurred in the performance of their duties." *Fed. Trade Comm'n v. Direct Benefits Grp.,* LLC, Case NO. 6:11-cv-1186-Orl-28TBS, 2013 WL 6408379, at *3 (M.D. Fla. Dec. 6, 2013).

Receivership courts have traditionally determined reasonableness of compensation by using the "lodestar" approach, calculating a reasonably hourly rate in the relevant market and the reasonable number of hours expended. *See, e.g., SEC v. Aquacell Batteries, Inc.*, Case No. 6:07-cv-608-Orl-22DAB, 2008 WL 276026, *3 (M.D. Fla. Jan. 31, 2008); *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988). The hourly rates billed by the Receiver and her professionals are reasonable for professionals practicing in the Southern District of Florida, particularly in light of the reduced hourly rates described above, and the services reflected in the attached exhibits were reasonably necessary to the Receiver's performance of her duties as set forth in the Receivership Order.

**Certification of Conference**

*The Receiver has discussed the relief requested herein with the Commission and is authorized to represent to this Court that, after reviewing the time records and other materials submitted herewith, the Commission does not oppose the relief sought in this Application.*

WHEREFORE, Melanie E. Damian, as Receiver, respectfully requests that the Court enter an Order:[4]

(a) approving the total amount of fees and costs for the Application Period of: the Receiver and her counsel Damian & Valori LLP in the amount of $16,460.50 in fees and $95.37 in costs; Kozyak, Tropin & Throckmorton LLP in the amount of $171,955.00 in fees and $18,733.24 in costs; KapilaMukamal, LLP in the amount of $23,724.30 in fees and $244.80 in costs; Shumaker, Loop & Kendrick, LLP in the amount of $14,568.00 in fees; and to the Receiver's Consulting Expert in the amount of $24,420.50 in fees;

(b) authorizing payment of 80% of the approved fees and 100% of the approved costs from the assets held by the Receivership Estate, as set forth herein;

(c) authorizing payment of the remaining balance of the approved fees (*i.e.*, the 20% holdback) upon final distribution of Receivership assets to investors; and

(d) amending the allowed claim amount for Claim 17 to be $187,400 and not $72,750.00 and authorizing the Receiver to pay the adjusted pro rata amount upon receipt of this Court's Order.

---

[4] A copy of a proposed order granting the Receiver's Fourth Interim Application for Order Authorizing Payment of Fees and Expenses is attached hereto as **Exhibit G**.

Dated: September 16, 2019

Respectfully submitted,

**KOZYAK TROPIN & THROCKMORTON, LLP**
*Counsel for the Receiver*
2525 Ponce de Leon Boulevard, 9th Floor
Miami, Florida 33134
Tel:   (305) 372-1800
Fax:  (305) 372-3508
By:    */s/ Corali Lopez-Castro*
         Corali Lopez-Castro
         FL Bar No. 863830
         Daniel S. Maland
         FL Bar No. 10114932
         clc@kttlaw.com
         dmaland@kttlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on September 16, 2019 as filed with the Clerk of the Court using CM/ECF.

By:    */s/ Daniel S. Maland*
         Daniel S. Maland

11M604303

## **CERTIFICATION**

The undersigned certifies that:

(a) I have read this application ("Application");

(b) to the best of my knowledge, information and belief formed after reasonable inquiry, the Application and all fees and expenses therein are true and accurate and comply with the Billing Instructions;

(c) all fees contained in the Application are based on the rates listed in the Exhibits attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

(d) I have not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission);

(e) in seeking reimbursement for a service which I justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), I request reimbursement only for the amount billed to me by the third-party vendor and paid by me to such vendor. To the extent that such services were performed by me as Receiver, I certify that I am not making a profit as Receiver on such reimbursable service.

(f) With the exception of the Billing Instructions, I have not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

Respectfully submitted and certified,

*/s/ Melanie Damian*
Melanie Damian, P.A. Receiver


Respectfully submitted this 16th day of September, 2019.