**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 16-CV-24678-COOKE/LOUIS

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

ONIX CAPITAL LLC, *et a*l,

    Defendants.

_____/

**REPORT AND RECOMMENDATIONS**

**THIS CAUSE** is before the Court upon Receiver's Fourth Interim Report and Motion Authorizing (A) the Payment of Fees and Expenses of Receiver and her Professionals and (B) Supplemental Distribution to Claimant No. 17 (ECF No. 270). This matter was referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Marcia G. Cooke, United States District Judge, for a report and recommendation (ECF No. 272). The Court held a hearing on the Motion on January 23, 2020 and has carefully reviewed the Receiver's submissions and is otherwise duly advised in the premises. Upon consideration, the undersigned respectfully recommends that Defendant's Motion be **GRANTED**.

    **I.**    **Procedural Background**

The Securities and Exchange Commission ("SEC") initiated this action against Defendants, alleging that Defendants Onix and Alberto Chang–Raji committed securities fraud (ECF No. 1). On April 4, 2017, Judge Cooke entered a Receivership Order (ECF No. 84), appointing the Receiver Melanie Damien to "[e]xercise full power and control to administer and

1

manage the business affairs, funds, asset of value of Onix and the Relief Defendants located within the United States." (ECF No. 84). The Receivership Order also provides that following a request seeking authorization from the Court, the Receiver may employ legal counsel, accountants, and consultants, and that the Receiver may pay reasonable compensation and expenses to those persons employed. The Receiver is also entitled to reasonable compensation.

The Court authorized the Receiver to employ her firm Damien & Valorie, LLP and Kozyak, Tropin & Throckmorton, LLP as her counsel to aid in the management of the receivership estate (ECF No. 100). The Court also authorized the Receiver to retain Soneet R. Kapila, of the accounting firm of KapilaMukama, LLM, as an accountant to assist the Receiver (ECF No. 153), and Gregory C. Yadley, Esq. and the law firm of Shumacker, Loop & Kendrick, LLP, as Corporate Advisory Counsel (ECF No.190). The Receiver moved for authorization from the Court to employ a consulting expert for the purpose of supporting the Receiver's negligence claims against third parties, limiting their opinion and testimony to the standard of care and negligence practices (ECF No. 254), which the Court approved, limiting the expert's fees to $10,000 (ECF No. 258).

The Receiver has filed three prior applications in this case, which were all approved by the Court (ECF Nos. 169, 242, 263). The Receiver has filed her Fourth Interim Report and Motion Authorizing (A) the Payment of Fees and Expenses of Receiver and her Professionals and (B) Supplemental Distribution to Claimant No. 17 (ECF No. 270). The Motion seeks payment of the reasonable amount of fees and costs for the application period of January 1, 2019 through June 30, 2019. The Receiver requests that the Court authorize payment of 80% of the approved fees and 100% of the approved costs from the assets held by the Receivership Estate. The Receiver also seeks to amend the payment that the Court previously authorized for Claimant Number 17.

## II.     Request for Approval of Reasonable Fees and Costs

### a.  Standard of Review

A receiver is an officer of the court and is subject to its direction and orders. *Stuart v. Boulware*, 133 U.S. 78, 81–82 (1890); *see also Fed. Trade Comm'n v. Vylah Tec LLC,* No. 2:17-CV-228-FTM-99MRM, 2018 WL 7365061, at *2 (M.D. Fla. June 13, 2018). A receiver is generally permitted to obtain counsel for herself, and other employees to aid in the management of the receivership estate. *Id*. A receiver owes a duty to exercise reasonable care to protect and preserve the assets of the receivership estate as required by a receivership order.

In determining a reasonable fee for a receiver, her attorneys, and accountants, a court must consider the nature and complexity of the legal issues presented and the skills necessary to resolve them. *Sec. Exch. Comm'n v. Elliot*, 953 F.2d 1560, 1577 (11th Cir. 2015) ("Whether a receiver merits a fee is based on the circumstances surrounding the receivership, and results are always relevant.") (internal quotation marks omitted); *see also Vylah Tec LLC,* 2018 WL 7365061, at *2 (noting that a receiver's compensation is usually determined "according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability in the management of affairs entrusted to [her], and the perplexity and difficulty involved in that management.").

Many courts begin the analysis for determining a receiver and her employees' fees with the lodestar approach, which considers whether the reasonable hourly rates of the claimed professionals are reasonable, and the reasonable hours expended. *Fed. Trade Comm'n v. Slimamerica et al*, No. 97-06072, ECF No. 329 (S.D. Fla. Dec. 3, 2008); *Fed. Trade Comm'n v. JPM Accelerated Serv., Inc.*, No. 6:09-CV-2021-ORL-28KRS, 2010 WL 11626760, at *2 (M.D. Fla. Jul. 12, 2010) ("Courts have held that a lodestar–style analysis is appropriate in evaluating the

3

reasonableness of fees charged by accountants and other non–attorney professionals."). A reasonable hourly rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. While the particular expertise, experience, and prestige of the attorneys may be taken into account, the fees are constrained to the range of the prevailing market rates. The relevant legal community for purposes of determining the reasonable hourly rate for an attorney's service is "the place where the case filed." *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). The fee applicant bears the burden of demonstrating that the rates charged are reasonable in the relevant legal community. *Norman*, 836 F.2d at 1299.

### b. Discussion

In this action, the Receiver is entitled to her and her employees' reasonable compensation and expenses pursuant to the Receivership Order (ECF No. 84)[1] and Orders approving the hiring of those employees claimed (ECF Nos. 100, 153, 193, 258). The Court evaluates the reasonable of the fees sought by the Receiver utilizing the lodestar approach, whereby the Court determines whether the hourly rates and hours expended by the Receiver and her various employees are reasonable. *Vylah Tec*, 2018 WL 7365061, at *2; *see also Slimamerica*, (ECF No. 329)

### 1. Receiver's Fees

The Receivership Order, the Receiver's duties include the management of the assets held by Onix and Relief Defendants, investigate those assets and documents, ascertain the identity of investors and creditors, and defend, settle, or commence legal proceedings related to Onix or the

---

[1] The Receivership Order provides that the Receiver may "[r]eceive reasonable compensation from the assets now held by or in the possession or control of Onix and Relief defendants located within the United Sates. This compensation shall be commensurate with the Receiver's duties and obligations outlined in this Order, and will be subject to approval of this Court." (ECF. No. 84).

Relief Defendants, including an ongoing bankruptcy proceeding in this district (ECF No. 84).

In the Motion, the Receiver contends that during the subject time period she has concluded the claims process for the Receivership Estate, including the resolution of all outstanding claims objections. The Receiver also coordinated the sale of the estate's nonpublic assets in SherpaCpaital, recovering $1,850,822 for the estate. The Receiver also reported continued efforts in the investigation and prosecution of claims against third parties, including obtaining a settlement in the amount of $2.6 million against a third party. The Receiver is also currently prosecuting a claims against a third parties, including an action seeking the return of $160,000 for fraudulent transfers. The Receiver has also maintained communications with creditors and the Internal Revenue Services.

The Court must first evaluate the Receiver's requested legal fees in terms of the appropriate hourly rate. *See Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The Receiver requests that the Court approve 80% of the fees incurred by the Receiver and her firm Damian & Valori LLP. The time records submitted by Receiver represent three different time keepers: Ms. Damien, who billed the most time at a rate of $275, Mr. Murena, an attorney at the firm, who billed less than one hour at a rate of $275, and a paralegal, who billed one hour at a rate of $100. The Court may make a fee award based on its own experience where documentation and testimony are inadequate or the fees claimed seem expanded. *Norman*, 836 F.2d at 1303 (citing *Davis v. Board of School Commissioners of Mobile Cty.*, 526 F.2d 865, 868). Having considered the itemized bills, counsels' experience in the areas of the applicable law and the Court's familiarity with attorneys' fees in general, the undersigned finds that the hourly rates of $275 for Ms. Damien and Mr. Murena is reasonable. Likewise, I find that a rate of $100 is reasonable for a paralegal who is performing tasks related to the claims administration process.

*See S.E.C. v. Digges*, No. 606-CV-137-ORL-31DAB, 2008 WL 4544456, at *2 (M.D. Fla. Oct. 10, 2008).

Next, the Court must consider the number of hours expended on the case together with the customary hourly fees charged in this community for similar services. Here, the Receiver submitted her and her firm's time entries (ECF No. 270–2) for the relevant time period, which reflect a total of 60.50 hours worked on this matter. Upon review of the time records, I find that the hours expended on the case are reasonable; the entries are neither duplicative nor unrelated to the duties of the Receiver as set out by the Court. Accordingly, I recommend that the Receiver's request for her fees be authorized by the Court.

### 2. Kozyak Tropin & Throckmorton, LLP's Fees

The Receiver seeks approval of 80% of the fees incurred by KTT. In support of the Motion, the Receiver attached The Court authorized the Receiver to retain KTT as counsel to aid the Receiver in the management of the estate (ECF No. 100). In the Motion, the Receiver notes that KTT reduced the hourly rates billed by partners from $600 to $275 and reduced their associate hourly rates from $375 to $150–$250. I find that these reduced rates are reasonable for both partners and associates. *See Slimamerica et al*, No. 97-06072, ECF No. 329 (approving the receiver's reduced hourly rate of $475, noting that the reduction amounted to essentially the services of one attorney as opposed to that of a group of senior and junior attorneys). Moreover, the undersigned notes that the Court has previously approved these rates for various KTT partners and associates. *See* ECF Nos. 169, 263.

Likewise, I find that the hours expended by the various time keepers are reasonable. While some of the billing entries themselves are partially redacted, the entries correlate with the tasks the Receiver has represented were completed during the subject time period. For example, the billing

entries represent that 71 hours were expended on the claims administration process, which the Receiver managed to complete during this period, as well as 574 hours for asset analysis and recovery, including the efforts expended on the recovery of $2.6 million through a settlement agreement that this Court approved. The entries are consistent with the Receiver's representation that the claims administration process was completed during the relevant time period and that the Receiver was able to identify transactions that could lead to asset recovery for the estate.

### 3. Shumaker Loop & Kendrick, LLP's Fees

The Receiver seeks approval of 80% of the fees incurred by SLK. The Court authorized the Receiver to retain SLK as counsel to aid the Receiver in corporate matters (ECF No. 190). Specifically, the Receiver sought assistance with respect to Onix's holdings in SherpaCapital, with questions regarding the sale of shares or alternative corporate structures that would be beneficial to the estate (ECF No. 186). In its Motion, the Receiver represents that corporate counsel was instrumental in the sale of the estate's nonpublic assets in SherpaCapital, as authorized by the Court (ECF No. 256), which resulted in proceeds in the amount of $1,850,822 for the estate.

In support of her Motion, the Receiver produced SLK's invoices, which represent that there are three separate time keepers: Mr. Gregory C. Yadley, Willard Blair, and Jon Skelton, who all billed at reduced rates, as approved by the Court (ECF No. 190). The Court has already found these rates reasonable with respect to corporate counsel's role in this matter (ECF No. 263).

Upon review of the invoices submitted by the Receiver, I find that the hours expended on assisting the Receiver in corporate matters related to SherpaCapital are reasonable. During the subject time period, corporate counsel expended approximately 32 hours on this matter. The billing entries represent that counsel reviewed and analyzed corporate documents and obtained bidder information to coordinate the sale of the estate's assets. The billing entries are not duplicative and

reflect efforts that were related to obtaining sale proceeds for the estate. Moreover, the undersigned notes that invoices for corporate counsel do not surpass the cap set forth by the Court.[2]

### 4. KapilaMukamal, LLP's Fees

The Receiver seeks approval of 80% of the fees incurred by KapilaMukamal, LLP's ("KPL"). The Receiver moved to retain KPL as her accounting firm to assist the Receiver in making investments, the source and uses of other funds related to the Receivership Estate, specifically, to aid in the determination of whether there were fraudulent transfers for which the estate could recover and to identify the identity of creditors (ECF No. 113).

In support of the Motion, the Receiver attaches multiple invoices from KPL, detailing the hours worked and the specific tasks completed (ECF No. 270–4). The invoices reveal that there are four time keepers, who all billed at reduced rates ranging between $150–350. The Court has already found that these reduced rates are reasonable for the accounting services provided. *See* ECF No. 255.

Moreover, upon review of the billing entries for the subject time period, I recommend finding that the hours expended are reasonable. The billing entries all relate to investigations into different investors, the dates of several transactions and efforts to ensure the estate remained in compliance with tax laws (ECF No. 270–4). Through the efforts of the accounting firm, the Receiver represents that she has been able to identify fraudulent transfers and commence claims against third parties in relation to those transactions, leading to the collection of $2.6 million for the Receivership Estate. Moreover, the billing entries are not duplicative and demonstrate multiple investigations into different transactions, which have proven to benefit the estate.

---

[2] The Court authorized the Receiver to retain SLK as its corporate counsel, permitted the Receiver to pay its counsel's reasonable fees and costs, with the Court's approval (ECF No. 190). The Court capped corporate counsel's fees at $100,000 (*id.*). In its Third Application, the Receiver sought fees for corporate counsel in the amount of $20,015.50.

### 5. Consulting Expert's Fees

Lastly, the Receiver seeks payment of 80% of her consulting expert's fees in the amount of $24,420.50. The Receiver moved to retain a consulting expert to serve as an expert witness in a negligence action filed against a third party (ECF No. 254). The Receiver noted in her motion that the expert would be capped at $10,000 (*id.*). The Court approved the Receiver's request to retain the expert and upon request, capped the expert's fees at $10,000, explaining that the Receiver could pay up to $10,000 from the estate without further approval form the Court (ECF No. 258). In the subject Motion, the Receiver notes that the expert's fees total $24, 420.50, approximately $14,000 more than what the Receiver anticipated or what the Court approved. Nonetheless, the Receiver seeks approval of the expert's fees as she contends that the expert was instrumental in a claim that resulted in a settlement of $2.6 million for the estate before suit was even filed.

In support of the Motion, the Receiver attached the expert's invoice (ECF No. 270–6). The Court was initially concerned with the vagueness of the invoices attached to the Motion. The invoice had been redacted and included entries that initially appeared to be duplicative. However, at the hearing, counsel for the Receiver explained that the expert performed additional work that had initially been unforeseen. Counsel also provided details regarding the expert's work, pointing to the expert's services related to a pre-suit mediation that resulted in a favorable settlement to the estate. Additionally, counsel represented that the entries that appeared to be duplicative were not and were different tasks completed at counsel's direction in anticipation of mediation. Finally, counsel for the Receiver represented that the expert billed at a reduced rate, which this Court previously approved. The Receiver, who also appeared at the hearing, confirmed all of counsel's representations. Accordingly, the undersigned is satisfied that the expert's fees, although in excess of what was originally anticipated, were reasonable.

### 6. Expenses

The Receivership Order also provides that the Receiver and her employees are also entitled to reasonable compensation of their out of pocket expenses (ECF No. 84). Out of pocket expenses generally mean expenditures actually incurred by the Receiver's employees. *See Sec. Exch. Comm'n v. Digges*, No. 6:06-CV-137-OLR-19KRS, 2007 WL 4884110, at *4 (M.D. Fla. Nov. 13, 20017).

The Receiver seeks costs for her counsel Damian & Valori LLP in the amount of $95.37 and KTT in the amount of $18,733.24. The Court has previously permitted costs for both firms including postage charges, printing, copying, research, traveling fees, and mediation fees (ECF Nos. 169, 242, 255). The Motion provides support for the costs sought. In light of the Court's previous approval of counsel's out of pocket expenses, the records attached to the Motion, and the fact that there are no objections as to costs, the undersigned recommends approval of the Receiver's request for expenses.

### III. Motion to Amend Payment to Claimant Number 17

The Receiver also seeks approval to amend a payment made to Claimant Number 17. The Court approved an initial payment in the amount of $72, 750. At the hearing, the Receiver and her counsel explained that initial paperwork presented appeared to be accurate and indicated the above amount of loss; however, the Claimant subsequently adduced paperwork supporting the higher claim amount of $187,400. The Receiver submitted the claimant's financial records to the forensic accountants, who confirmed the claimed amount. Accordingly, the undersigned recommends approval of the Receiver's amendment to the payment to Claimant Number 17.

### IV. Recommendations

For the foregoing reasons, the undersigned **RECOMMENDS** Receiver's Motion (ECF

No. 270) be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge. Failure to file objections by that date shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**RESPECTFULLY SUBMITTED** in Chambers this 24th day of January 2020.

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE

The Honorable Marcia G. Cooke
Counsel of Record