UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: No. 1:16-cv-24678

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ONIX CAPITAL LLC, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT AGAINST
DEFENDANT ALBERTO CHANG-RAJII**

Plaintiff Securities and Exchange Commission moves the Court to enter Final Judgment against Defendant Alberto Chang-Rajii ("Chang") that orders him to pay disgorgement of $5,552,500, prejudgment interest on disgorgement of $1,199,133.44, and a civil penalty of $5,552,500.

**I.  Relevant Procedural History**

On December 15, 2016, the Commission filed an Amended Complaint against Chang and several affiliated entities. [DE 41]  The Commission and Chang reached a partial settlement, under which he agreed to the entry of permanent injunctive relief, with the issues of disgorgement, prejudgment interest, and a civil penalty to be determined by the Court.  [DE 52-3]  On January 26, 2017, the Court entered the agreed upon judgment.  [DE 60]

**II.  Facts Alleged In The Complaint And Accepted As True For This Motion**

Under the terms of the consent, Chang is precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint, and the allegations of the Complaint are deemed admitted for purposes of this Motion. [DE 52-3, ¶ 3; DE 60, § IV]  Thus, for purposes of deciding

this motion, the following allegations of the Amended Complaint[1] are deemed admitted and the Court may take them as true.

Chang, a Chilean national, was the founder, owner and sole manager of Defendant Onix Capital, LLC ("Onix") and the founder, majority owner, and sole authorized person for the eight entities named as Relief Defendants. [DE 41, ¶ 10]  Between June 2012 and March 2016, Chang raised money from investors for Onix in the form of promissory notes.  [*Id.* ¶ 29]  Chang also solicited and obtained investments in the Relief Defendants.  [*Id.* ¶ 36]

In raising funds from investors in both Onix and the Relief Defendants, Chang fraudulently promoted himself as a successful inventor and entrepreneur.  [*Id.* ¶ 25]  He claimed both orally and in writing to have (a) earned an MBA from Stanford, (b) parlayed an early $10,000 investment in Google into $700 million, and (c) received a "Best Investor" award from an organization of "angel" investors.  [*Id.* ¶¶ 25-28, 37, 42]  But it was all a lie:  Chang did not attend Stanford, he was not an early investor in Google, he had not earned $700 million by investing in Google, and he had not received any kind of angel investor award.  [*Id.* ¶ 28]

Chang also misrepresented his personal wealth.  Beginning in 2013, some investors received a private placement memorandum ("PPM") representing that Chang guaranteed repayment of the promissory notes.  [*Id.* ¶ 31]  In support of that representation, the PPM included a certificate falsely representing that Chang had over $100 million in accounts in the United States at J.P. Morgan, when the true amount was less than $1 million and Chang's accounts there never totaled more than $10 million.  [*Id.* ¶¶ 31, 43]

---

[1] The consent and judgment refer to the Complaint.  However, the amended and original complaints are virtually identical, with the exception of a modification in Chang's favor to paragraph 30.  Accordingly, the Commission will cite here to the Amended Complaint.

Chang also made misrepresentations about the investment itself. The Onix promissory notes bore annual interest rates between 12% and 19%. [*Id.* ¶¶ 32, 40] In the PPM, Chang represented that the note proceeds would be used to invest in business opportunities and for Onix's general working capital needs. [*Id.*] The interest and principal would be paid from returns on the investments Onix would be making. [*Id.* ¶¶ 33, 40] However, less than half the money raised through the promissory notes was invested as stated in the PPM, and the investments that were made produced no income during the relevant period. [*Id.* ¶¶ 33, 40] Instead, Chang commingled Onix investor funds with funds from his personal bank accounts and used the commingled funds to pay investors. [*Id.* ¶¶ 33, 40]

Chang's scheme began to unravel when, in March 2016, articles were published questioning the truth of Chang's representations about his background and the financial soundness of his companies. [*Id.* ¶ 44] Chang abandoned the business and sought residency in Malta.[2] [*Id.* ¶¶ 45-46] Between March 24, 2016 and May 19, 2016, Chang transferred approximately $4 million, including Onix investor funds, from bank accounts he controlled in the United States to accounts in Malta, the United Kingdom, Switzerland, and Australia. [*Id.* ¶ 47]

In addition to the money Chang took at the scheme's collapse, while it was in progress, Chang transferred over $11 million from Onix bank accounts containing investor proceeds and converted it to his own use, including spending approximately $1.4 million on property in the British Virgin Islands, $62,500 at a clothing boutique, and $90,000 on a trip to Africa. [*Id.* ¶ 39]

---

[2] The Maltese courts denied Chile's request to extradite Chang. The appellate court relied largely on the Chilean authorities' failure to submit properly sworn witness statements and the failure of the translator of the Chilean documents to attest to the translation's accuracy. *See The Police v. Alberto Samuel Chang Rajii*, Appeal No. 171/2017 (Malta Ct. Crim. App. Nov. 6, 2018) (attached as Exhibit A).

On July 26, 2016, the Commission took Chang's testimony after his "relocation" to Malta. [DE 7-8, at 13] Chang asserted his Fifth Amendment privilege as to all questions, making it clear that he would assert the privilege with respect to "any substantive questions." He specifically declined to answer inquiries regarding whether investor funds were invested as represented, the purposes of the transfers between Chilean accounts and his personal accounts, and the use of investor proceeds to pay for personal expenses. [*Id.* at 16, 18 (testimony at 10:9-20, 18:25-19:19, 20:23-21:2)]

### III.  Memorandum of Law

#### A.  The Court Should Order Chang to Disgorge Ill-Gotten Gains

"A disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [15 U.S.C.] § 78u(d)(5)." *Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020).  "In order to be entitled to disgorgement, the SEC needs to produce only a reasonable approximation of the defendant's ill-gotten gains, and '[e]xactitude is not a requirement.'" *SEC v. Monterosso*, 756 F.3d 1326, 1337 (11th Cir. 2014) (quoting *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005)).  Upon the Commission's production of a reasonable approximation, "the burden shifts to the defendant 'to demonstrate the SEC's estimate is not reasonable.'" *SEC v. Levin*, 849 F.3d 995, 1006 (11th Cir. 2017) (quoting *Monterosso*, 756 F.3d at 1337).  Similarly, if the Commission's "measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004).

Disgorgement is "properly based upon . . . [defendant's] gains and not the investors' losses." *Levin*, 849 F.3d at 1006.  Further, a defendant's financial situation, or any financial hardship that disgorgement would impose, are not factors to be considered in determining

4

disgorgement. *SEC v. Warren*, 534 F.3d 1368, 1370 & n.2 (11th Cir. 2008) (noting that "[a] contrary rule would allow con artists to escape disgorgement liability by spending their ill-gotten gains—an absurd result").

Here, the Court should impose disgorgement of $5,552,500. As set forth in the Amended Complaint, Chang transferred over $11 million from Onix to his own account, spending $1.4 million on property in the British Virgin Islands, $62,500 at a clothing boutique, and $90,000 on a trip to Africa. He also was paid management fees pursuant to a formula outlined in the Relief Defendants' operating agreements. In addition, after he left the United States for Malta, Chang transferred approximately $4 million from the United States to accounts abroad. Therefore, a reasonable approximation of the disgorgement amount would be:

| Item | Amount |
|---|---|
| Property in British Virgin Islands | $1,400,000 |
| Clothing Boutique | $62,500 |
| Africa Trip | $90,000 |
| Fund Transfers after Flight to Malta | $4,000,000 |
| **Total** | **$5,552,500** |

The proposed disgorgement amount is consistent with the Supreme Court's decision in *Liu*. Timely payment by Chang of any disgorgement awarded would, through the Receiver, be "returned . . . to wronged investors for their benefit." 140 S. Ct. at 1948.[3] Moreover, because the Commission is relying solely on monies Chang converted to his own use (and excluding from the calculation management fees he was paid), there is no issue of giving Chang credit for "legitimate

---

[3] The Commission frequently provides for disgorgement and penalties to be turned over to a receiver or bankruptcy trustee for distribution to investors. *See SEC v. Quiros*, No. 1:16-cv-21301, DE 474, at 2-3 (S.D. Fla. May 7, 2018) (judgment providing for defendant to disgorge assets to the court-appointed Receiver, who could propose a plan to distribute the funds); *SEC v. Shapiro*, No. 1:17-cv-24624, DE 177 (S.D. Fla. May 31, 2019) (order providing for monies deposited with the Commission pursuant to previously entered final judgments to be distributed in a related bankruptcy proceeding). Copies of these documents are attached respectively as Exhibits B and C.

expenses." *Id.* at 1950. Accordingly, the Court should order Chang to pay disgorgement of $5,552,500.

## B. Prejudgment Interest

In addition to ordering disgorgement, the Court should order prejudgment interest, "which helps assure that defendants do not profit from their fraud." *SEC v. Cook*, Case No. 1:13-cv-01312, 2015 WL 5022152 (S.D. Ind. Aug. 24, 2015).[4] Requiring payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest free loan procured as a result of illegal activity. *SEC v. Merchant Capital, LLC*, 486 F. App'x 93, 97 (11th Cir. 2012); *SEC v. Moran*, 944 F. Supp. 286, 295 (S.D.N.Y. 1996). A defendant's wrongdoing justifies awards of prejudgment interest in accord with the doctrines of fundamental fairness. *SEC v. Tome*, 638 F. Supp. 638, 639 (S.D.N.Y. 1986). In Commission cases, prejudgment interest on disgorgement amounts generally is calculated based on the IRS underpayment rate, i.e., the delinquent tax rate as established by the Internal Revenue Service, IRC § 6621(a)(2), and assessed on a quarterly basis. *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1476 (2d Cir. 1996); *SEC v. Huff*, 758 F. Supp. 2d 1288, 1364 (S.D. Fla. 2010) (Rosenbaum, M.J.) ("courts have adopted the underpayment rate without controversy . . . that rate reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from" the fraud), *aff'd on other grounds*, 455 F. App'x 882 (11th Cir. 2012).

Using that rate, the Commission's prejudgment interest calculator shows the prejudgment interest on Chang's disgorgement to be $1,199,133.44, calculated from April 30, 2016 (the date

---

[4] The decision of whether to impose prejudgment interest is within the Court's discretion. *SEC v. Hall*, 759 F. App'x 877, 883 (11th Cir. 2019); *SEC v. Carillo*, 325 F.3d 1268, 1273 (11th Cir. 2003).

provided in the judgment) until August 31, 2020.  Exhibit D, Prejudgment Interest Report (run by the undersigned).

### C.  Civil Penalties

Additionally, the Commission requests a $5,552,500 penalty against Chang, an amount equal to the disgorgement sought.  "Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." *Monterosso*, 756 F.3d at 1338.  The appropriate penalty amount is determined under the framework of Section 20(d) of the Securities Act of 1933, Section 21(d) of the Securities Exchange Act of 1934, and Section 209(e)(2) of the Investment Advisers Act of 1940 [15 U.S.C. §§ 77t(d), 78u(d), 80b-9(e)(2)], which sets forth three tiers of penalties, all of which apply "for each violation."  All three tiers would authorize the Court to penalize Chang in an amount up to his "*gross* pecuniary gain."  However, the Commission here seeks a penalty only in the net amount Chang took for his personal benefit.  *See SEC v. BIC Real Estate Development Corp.*, No. 1:16-cv-00344, 2017 WL 1740136, *6 (E.D. Cal. May 4, 2017) ("Courts frequently authorize civil penalties equal to the amount of disgorgement.") (citing cases).

The Commission submits that a penalty against Chang in the amount of the disgorgement award is appropriate here given the seriousness of his misconduct.  In determining the penalty amount,

> courts consider (1) the egregiousness of the defendants' conduct; (2) the degree of their scienter; (3) whether their conduct created substantial losses or the risk of substantial losses to others; (4) whether the conduct was isolated or recurrent; and (5) whether the court should reduce the penalty due to the defendants' demonstrated current and future financial condition.

*SEC v. U.S. Pension Trust Corp.*, No. 07-22570-CIV, 2010 WL 3894082, at *25 (S.D. Fla. Sept. 30, 2010) (citation omitted)).  Here, the proposed penalty amount is warranted in light of the egregiousness of Chang's fraudulent conduct, which involved a high degree of scienter, created substantial losses for investors, and continued over a period of years.  The Commission lacks

information about Chang's current and future financial condition, but even if he submits evidence on this point, ability to pay is "'[a]t most . . . one factor to be considered in imposing a penalty.'" *Monterosso*, 756 F.3d at 1338 (quoting *Warren*, 534 F. 3d at 1370).[5]

## IV.  Conclusion

**WHEREFORE**, the Commission respectfully requests the Court enter Final Judgment against Chang for disgorgement of $5,552,500, prejudgment interest on disgorgement of $1,199,133.44, and a civil penalty of $5,552,500.

## Certificate of Conferral

Pursuant to Local Rule 7.3(b), I certify that I conferred with counsel for Chang regarding the relief the Commission is seeking herein but we were unable to resolve the issues.

Dated:  September 17, 2020                                Respectfully submitted,

By:   s/Andrew O. Schiff
Andrew O. Schiff
Regional Trial Counsel
S.D. Fla. No. A5501900
Telephone:  (305) 982-6390
Facsimile:  (305) 536-4154
E-mail: schiffa@sec.gov

Eric E. Morales
Senior Counsel
S.D. Fla. No. A5500886

---

[5] If the Court assessed the penalty based on the tiers instead of the disgorgement amount, then, after the inflation adjustment, Securities Act Rel. No. 10740 (Jan. 8, 2020) (https://www.sec.gov/rules/other/2019/33-10740.pdf), under the first tier, the Court could impose a penalty of up to $9,639 per violation for violations that do not involve scienter or intent to defraud.  The second tier, which authorizes the assessment of up to a $96,384 penalty per violation, applies where the Court concludes that the violation involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.  Finally, the third tier permits up to a $192,768 penalty per violation, where the violation involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement and the violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.  If the Court were to use the "tier" method, then third-tier penalties would be appropriate here given that the admitted facts show that the violation involved fraud that caused substantial losses to other persons.

Telephone: (305) 982-6210
Email: moralese@sec.gov

Sean M. O'Neill
Senior Counsel
Fla. Bar No. 41774
Telephone: (305) 982-6302
Email: oneills@sec.gov

Attorney for Plaintiff
Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, FL 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF.

        s/Andrew O. Schiff
        Andrew O. Schiff